No. 26-2469
IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

Americans For Prosperity Foundation, et al.,
*Appellants*,

v.

Anthony Albence, et al.,
*Appellees*.

---

On Appeal from the United States District Court
for the District of Delaware
No. 1:26-cv-00445-JLH
The Honorable Jennifer L. Hall

---

**Reply Brief for Appellants**

---

ERIKA D. PROUTY
ROBERT J. TUCKER
BAKER & HOSTETLER LLP
200 Civil Center Dr., Suite 1200
Columbus, OH 43215-4138
(614) 228-1541
eprouty@bakerlaw.com
rtucker@bakerlaw.com

ALLEN J. DICKERSON
RICHARD B. RAILE
BAKER & HOSTETLER LLP
Washington Square, Ste. 1100
1050 Connecticut Ave., N.W.
Washington, DC 20036
(202) 861-1711
adickerson@bakerlaw.com
rraile@bakerlaw.com

*Counsel for Appellants Americans for Prosperity Foundation and Americans for Prosperity*

**Table of Contents**

Introduction ...................................................................................................1

Argument.......................................................................................................2

I.      The Act cannot survive exacting scrutiny. ......................................2

        A.      The Act is not narrowly tailored to an important
                government interest.............................................................2

        B.      *Delaware Strong Families* is not controlling...........................13

        C.      Delaware's campaign finance precedents do not rescue the
                Act. ...................................................................................18

II.     The Act is unconstitutional as applied to Appellants. ...................22

III.    The remaining injunction factors favor an injunction. ..................25

Conclusion ..................................................................................................27

## **Table of Authorities**

**Cases**

*AFP v. Meyer*,
   724 F.Supp.3d 858 (D. Ariz. 2024) ...............................................................10

*AFPF v. Bonta*,
   594 U.S. 595 (2021)............................................................................ *passim*

*Amalgamated Transit Union Local 85 v. Port Authority of Allegheny County*,
   39 F.4th 95 (3d Cir. 2022) .................................................................................1

*Anderson v. Davila*,
   125 F.3d 148 (3d Cir. 1997)...........................................................................25

*Ashley v. Deutsche Bank Aktiengesellschaft*,
   144 F.4th 420 (2d Cir. 2025) .........................................................................13

*Brown v. Ent. Merchants Ass'n*,
   564 U.S. 786 (2011).........................................................................................4

*Buckley v. Valeo*,
   424 U.S. 1 (1976)...........................................................................................25

*Burwell v. Hobby Lobby Stores, Inc.*,
   573 U.S. 682 (2014).........................................................................................9

*Citizens United v. FEC*,
   558 U.S. 310 (2010)............................................................................ *passim*

*Citizens United v. Gessler*,
   773 F.3d 200 (10th Cir. 2014) ................................................................. 23, 24

*Ctr. for Individual Freedom, Inc. v. Tennant*,
   706 F.3d 270 (4th Cir. 2013) ..........................................................................10

*Del. Strong Fams. v. Att'y Gen. Del.*,
   793 F.3d 304 (3d Cir. 2015)................................................................. 15, 16, 24

*DiFiore v. CSL Behring, LLC*,
  879 F.3d 71 (3d Cir. 2018)..................................................................................14

*Fam. PAC v. McKenna*,
  685 F.3d 800 (9th Cir. 2012) ............................................................................10

*FEC v. Mass. Citizens for Life, Inc.*,
  479 U.S. 238 (1986)..........................................................................................23

*FEC v. Wis. Right To Life, Inc.*,
  551 U.S. 449 (2007)..................................................................................... 20, 23

*First Nat. Bank of Bos. v. Bellotti*,
  435 U.S. 765 (1978)........................................................................................4, 5

*Fres-co Sys. USA, Inc. v. Hawkins*,
  690 F. App'x 72 (3d Cir. 2017) ........................................................................26

*Gaspee Project v. Mederos*,
  13 F.4th 79 (1st Cir. 2021)....................................................................... 10, 16, 18

*Hohe v. Casey*,
  868 F.2d 69 (3d Cir. 1989)................................................................................25

*Holder v. Humanitarian Law Project*,
  561 U.S. 1 (2010)......................................................................................... 12, 13

*Ill. State Bd. of Elections v. Socialist Workers Party*,
  440 U.S. 173 (1979)..................................................................................... 20, 21

*In re Krebs*,
  527 F.3d 82 (3d Cir. 2008)................................................................................14

*Justice v. Hosemann*,
  771 F.3d 285 (5th Cir. 2014) ............................................................................10

*Lebron v. Nat'l R.R. Passenger Corp.*,
  513 U.S. 374 (1995)..........................................................................................22

iii

*McConnell v. FEC*,
  540 U.S. 93 (2003) ............................................................................ 19, 20

*McCutcheon v. FEC*,
  572 U.S. 185 (2014) ................................................................................5

*Mennen Co. v. Atl. Mut. Ins. Co.*,
  147 F.3d 287 (3d Cir. 1998) ...................................................................14

*N.J. Bankers Ass'n v. Att'y Gen. N.J.*,
  49 F.4th 849 (3d Cir. 2022) ...................................................................16

*Nat'l Rifle Ass'n of Am. v. Vullo*,
  602 U.S. 175 (2024) ................................................................................5

*Nationwide Ins. v. Patterson*,
  953 F.2d 44 (3d Cir. 1991) .....................................................................14

*No on E, San Franciscans Opposing the Affordable Hous. Prod. Act v. Chiu*,
  62 F.4th 529 (9th Cir. 2023) ...................................................................10

*Picard v. Magliano*,
  42 F.4th 89 (2d Cir. 2022) .......................................................................24

*Pursuing Am.'s Greatness v. FEC*,
  831 F.3d 500 (D.C. Cir. 2016) .................................................................24

*Renne v. Geary*,
  501 U.S. 312 (1991) ................................................................................24

*Rio Grande Found. v. Oliver*,
  154 F.4th 1213 (10th Cir. 2025) ............................................................10

*Serafine v. Branaman*,
  810 F.3d 354 (5th Cir. 2016) ..................................................................24

*The Fla. Star v. B.J.F.*,
  491 U.S. 524 (1989) ................................................................................4

*Van Hollen v. FEC*,
　811 F.3d 486 (D.C. Cir. 2016) ............................................................21

*Vt. Right to Life Comm., Inc. v. Sorrell*,
　758 F.3d 118 (2d Cir. 2014) ...............................................................10

*Webster v. Fall*,
　266 U.S. 507 (1925) .............................................................................20

*Worley v. Fla. Sec'y of State*,
　717 F.3d 1238 (11th Cir. 2013) ..........................................................10

*Wyo. Gun Owners v. Gray*,
　83 F.4th 1224 (10th Cir. 2023) ..................................................... *passim*

**Statutes**

15 Del. C. § 8002 .......................................................................................11


18 U.S.C. § 2339B ....................................................................................13

**Other Authorities**

*Frequently asked questions about the ban on political campaign intervention by
501(c)(3) organizations*, IRS, https://www.irs.gov/charities-non-
profits/charitable-organizations/frequently-asked-questions-about-the-ban-on-
political-campaign-intervention-by-501c3-organizations-contributions-to-
political-organizations (last visited Aug. 4, 2026)................................11

**Rules**

Sup. Ct. R. 10 .............................................................................................17

**Treatises**

STEPHEN M. SHAPIRO, ET AL., SUPREME COURT PRACTICE ch. 4, § 2
　(11th ed. 2019) ....................................................................................17

**Regulations**

72 Fed. Reg. 72899 (Dec. 26, 2007) ................................................. 20, 21

**Introduction**

Delaware's brief demonstrates that it cannot meet its "burden…of proving that [its] law is constitutional." *Amalgamated Transit Union Local 85 v. Port Authority of Allegheny County*, 39 F.4th 95, 103 (3d Cir. 2022) (quotation omitted). While acknowledging that this case is governed by the exacting scrutiny standard, the State declines to "demonstrate its need for" astoundingly invasive donor information "in light of any less intrusive alternatives." *AFPF v. Bonta*, 594 U.S. 595, 613 (2021).

Instead, it dodges the question, arguing that existing Circuit precedent has already applied narrow tailoring to its law—even though this is plainly wrong and the Tenth Circuit has expressly said so. *See infra* § I.B. Or, it suggests, *AFPF* did not alter the law at all—in the teeth of direct statements to the contrary by both the First and Tenth Circuits. *Id*. It points to multiple circuit decisions as justification for its law, but all of them involve statutes that are *better* tailored and serve as models for Delaware to reform its unconstitutional enactment, not authority to uphold its current regime. *See infra* § I.A.2. Finally, it bypasses the Supreme Court's most recent and on-point authority, *AFPF*, and instead argues that it is protected by earlier campaign finance cases blessing a different statute and administered—with the approval of the D.C. Circuit—under an earmarking regime is not present here. *See infra* § I.C.

But then, despite strenuously arguing that voters cannot evaluate public messages without knowing a group's donors, Delaware reverses course. Appellants are not harmed, it says, because they may speak through a PAC and not disclose their donors at all. Br. 52-53. Delaware is wrong and, besides torpedoing its supposed interest, this argument—that speaking through a PAC is an acceptable alternative to speaking directly—was raised and rejected in *Citizens United.* § I.A.2.

At the end of the day, Delaware believes that its unbounded and undefined informational interest gives it the right to "near plenary donor disclosure." Br. 36. The State is mistaken and a preliminary injunction is warranted.

### Argument

**I.    The Act cannot survive exacting scrutiny.**

**A.    The Act is not narrowly tailored to an important government interest.**

Appellants' opening brief demonstrated that the Act triggers exacting scrutiny and fails the standard announced in *AFPF v. Bonta*. Opening Br. 17-40. The State acknowledges that exacting scrutiny applies, Br. 28, but does precious little to defend the Act under that demanding standard. The Act is not remotely tailored because its demand for donors' public exposure sweeps in startling swaths of information with no connection to Delaware election-related speech.  Nowhere does the State identify why basic tailoring devices—whether an earmarking arrangement or opt-out system or indeed *any* attempt to cabin compelled disclosure to those

actually supporting regulated speech in Delaware—would not serve its supposed purpose. That omission confirms that it cannot meet the governing standard.

**1.      An unbounded information interest is insufficiently weighty or genuine to justify any compelled disclosure.**

The State's own briefing confirms the weight of Appellants' argument that the State has advanced no "sufficiently important interest" to justify any disclosure requirement. *AFPF*, 594 U.S. at 607; *see* Opening Br. 21-24. The State claims Delawareans must "know[] who is behind the electioneering messages they hear." Br. 39. But its own brief abandons that interest by admitting the State gladly authorizes "a Delaware-specific association or PAC to sponsor" electioneering communications and bypass the Act's donor disclosure requirement. Br. 38. The State claims this framework contains no meaningful "formal organizational requirements" or "contribution limits" of the type imposed by federal law and "is simply an alternative entity formed to facilitate campaign finance reporting." Br. 38-39. But it is unserious for the State to contend that entities like Appellants must disclose all their donors nationwide going back years to allow "voters to evaluate and measure the statements made" in advertising the sponsor, Br. 7 (citation omitted), and then propose that Appellants can avoid doing exactly that "via a simple online form," Br. 38. Loopholes like this "raise[] serious doubts about whether the government is in fact pursuing the interest it invokes." *Brown v. Ent. Merchants*

*Ass'n*, 564 U.S. 786, 802 (2011); *see The Fla. Star v. B.J.F.*, 491 U.S. 524, 540 (1989) (similar "serious doubts").

The State's invocation of "the federal law upon which [the Act] was [supposedly] modeled," Br. 29, wrongly assumes that Supreme Court precedents approving one reporting regime based on interests of the federal government necessarily approved all reporting regimes. As shown below (§ I.C), the precedents the State cites do not support its position here. In any event, the State admits federal law is not administered to require disclosure of all donors of entities that spend on electioneering communications. *See* Br. 35-36. And even if it were administered as the State thinks it should be, *see* Br. 6 & n.2, federal law does not categorically nix disclosure obligations for anyone who fills out "a simple…form.". Br. 38. A state's supposed "purpose" can be "belied" by other provisions of its own law that "are both underinclusive and overinclusive." *First Nat. Bank of Bos. v. Bellotti*, 435 U.S. 765, 792-93 (1978). The State's contention that its regime is so flimsy as to be meaningless betrays its asserted interest as equally meaningless.

The State also has little response to Appellants' point that the startling sweep of the Act calls for the Court to address governmental interests "[i]n reality." *AFPF*, 594 U.S. at 614; Opening Br. 23. The State argues that *AFPF* did not "question the informational interest in electoral disclosure," Br. 32, but that is not what Appellants argued. Instead, Appellants demonstrated that Delaware's informational interest in

4

electoral disclosure of Delaware-related speech has so little to do with the Act's scope as to suggest that is not the State's genuine interest. *AFPF*, 594 U.S. at 614; *Bellotti*, 435 U.S. at 792-93. Perhaps this is a well-meaning—but legally insufficient—goal of "administrative convenience." *AFPF*, 594 U.S. at 614. Or the State may harbor an invidious desire to deter spending on disfavored speech. *See generally Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175 (2024). Either way, the interest does not justify any disclosure requirement.

### 2.    The Act is not narrowly tailored.

The "dramatic mismatch," *AFPF*, 594 U.S. at 612, between the Act's scope and the State's supposed informational interest dooms it under the narrow tailoring inquiry. In fact, the State's lengthy brief never gets around to plainly stating a coherent position on the narrow tailoring inquiry, properly construed.

a.    "In the First Amendment context, fit matters." *McCutcheon v. FEC*, 572 U.S. 185, 218 (2014). Accordingly, narrow-tailoring requires the State to "demonstrate its need for" the information it demands "in light of any less intrusive alternatives." *AFPF*, 594 U.S. at 613.

Remarkably, the State denies that "the consideration of less restrictive alternatives" is "a mandatory element of narrow tailoring review." Br. 24-25. Nothing could be further from the truth. *AFPF* repeatedly stated the inquiry in mandatory terms, clarifying that a state "*must*…demonstrate its need…in light of

any less intrusive alternatives," that their measures "'*must* be viewed in the light of less drastic means for achieving the same basic purpose,'" and that they "*must* affirmatively establish the reasonable fit we require." 594 U.S. at 610, 613-614 (emphasis added) (citations omitted). Indeed, the government's duty "to justify why it could not use less intrusive tools to further its interests" is *the* hallmark of narrow-tailoring review. *Wyo. Gun Owners v. Gray*, 83 F.4th 1224, 1247 (10th Cir. 2023). Without that inquiry, there is no narrow tailoring test. *Id.* at 1248 (calling this "the lodestar of the narrow-tailoring inquiry").

Doubling down on this theme, the State dismisses *AFPF* as having "no direct relevance here" because it "was not a campaign finance disclosure case." Br. 19. The State reasons that *AFPF* "contains no analysis of the government's interest in providing information to the electorate" or "about how to assess whether a campaign finance law like Delaware's is sufficiently tailored." Br. 20. This is a non-sequitur. While the governmental interest asserted in *AFPF* was different, the decision nonetheless identified cross-cutting, narrow-tailoring principles that apply in all compelled-disclosure cases. *See* 594 U.S. at 608-15. Indeed, among the precedents *AFPF* cited, none appears to have concerned the specific governmental interest asserted in *AFPF*: "preventing wrongdoing by charitable organizations." *Id.* at 612. And indeed, the Court cited multiple campaign-finance precedents, resolving any doubt whether *AFPF* controls the analysis of the State's law here. *See, e.g., id.* at

607-08. Moreover, the Court recognized that proffered interest as "no[] doubt…important," *id.* at 612, so the State cannot credibly argue that *AFPF* does not apply based upon a comparatively stronger interest here. *See supra* § I.A.1.

As already shown, *AFPF*'s principal contribution to the exacting-scrutiny test was the clarification that it demands an analysis of less-intrusive alternatives. *AFPF* also demonstrated what a regime that is *not* properly tailored to a strong interest looks like. Appellants demonstrated that the condemned regime in *AFPF* looks favorable by comparison here. Opening Br. 25-26. California's donation threshold ($5,000) was 50 times higher than Delaware's and promised confidentiality, where Delaware proudly proclaims a need for public exposure on the internet. Br. 32. It would be hard to match "the amount and sensitivity of" information Delaware demands. *AFPF*, 594 U.S. at 613. Delaware never explains why measures tailored to an informational interest may need to differ from, and be harsher than, those tailored to prevent charitable fraud.

b.　　The State's overt request that this Court repeat the errors the Ninth Circuit made in *AFPF* emphasizes its inability to satisfy the narrow-tailoring inquiry. In the section of its brief (a mere one page among 54 total) where the State promises to show "[t]he Act is narrowly tailored," the State provides no narrow-tailoring analysis. Br. 33 (boldface omitted). The State simply compares the Act to federal law, a point addressed below (§ I.C). If it were so obvious that the Act is narrowly

tailored to enable Delawareans to "know[] who is behind the electioneering messages they hear," Br. 39, the State ought to be able to spell that out directly.

Most importantly, the State does not "justify why it could not use less intrusive tools to further its interests." *Wyo. Gun Owners*, 83 F.4th at 1247. The State focuses on earmarking requirements and contends they are not "a compulsory feature" of disclosure regimes. Br. 35. This misses that the State must nonetheless prove why *its actual interests* could not be served in an earmarking regime. *See Wyo. Gun Owners*, 83 F.4th at 1248-50. Pointing to other laws and precedents does not meet the State's burden of justifying its own law. *Contra* Br. 34-41. For example, the Tenth Circuit in *Wyo. Gun Owners* acknowledged that an earmarking regime is not necessarily required but nonetheless found that the state failed, on that record, to show why such a regime would not serve its needs. 83 F.4th at 1248-50 & n.8.

Besides, the State's discussion is non-responsive to Appellants' argument that *any* law different from the Act would almost have to be less intrusive because the Act is maximalist—the opposite of tailored. Opening Br. 27-30. The State does nothing to explain why higher thresholds would not serve its purposes.[1] Nor does it explain why an opt-out regime would not work. *See* Br. 38 (changing the subject).

---

[1] While the State attempts to justify the four-year look-back window for measuring the $100 contribution threshold, it erroneously focuses on "the length of the relevant candidacy." Br. 34. This is a curious assertion that every officeholder is a "candidate" for further office at all times. More importantly, what is relevant is the activities of the *spender* and the *donor* not any candidate. Why does Delaware need

Importantly, Delaware struggles with Wyoming's (invalidated) approach of mandating disclosure of donors whose contributions "relate to" a regulated communication. *Wyo. Gun Owners*, 83 F.4th at 1248. The State contends that Judge Tymkovich's *Wyo. Gun Owners* opinion was wrong, Br. 26-27—and not just wrong but near "frivolous," Br. 13—so it necessarily assumed the burden of showing why Wyoming's more tailored approach would not work in Delaware. The State does not even pretend to address this argument despite Appellants raising it prominently in their opening brief. Opening Br. 27.

The fact that the Tenth Circuit condemned Wyoming's narrower approach only confirms Delaware's problem here. A finding that a more tailored law is unconstitutional only proves a less tailored one is all the more unconstitutional. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 730-31 (2014) (finding that accommodation provided to some groups demonstrated lack of tailoring while leaving open possibility that the accommodation itself was insufficiently tailored).

Undeterred, the State reaches for a smorgasbord of precedents upholding regimes *more* tailored than its own. The Act reaches donors who have given as little as $100.01 in the aggregate during the applicable period (as long as four years) regardless of the purpose of the donation. Rhode Island's threshold is ten times

---

to know that someone gave a small, general donation to an Appellant in 2023 because of 2026 spending? That has nothing to do with the length of candidacies.

higher at $1,000 and enables regulated persons to let donors opt-out from their donations' funding electioneering communications, *see Gaspee Project v. Mederos*, 13 F.4th 79, 89 (1st Cir. 2021), and New Mexico's is triggered either by donations fifty times higher at $5,000 from donors who did not opt-out or by $200 donations expressly earmarked for independent expenditures. *Rio Grande Found. v. Oliver*, 154 F.4th 1213, 1218, 1227-28 (10th Cir. 2025); *see also AFP v. Meyer*, 724 F.Supp.3d 858, 878 (D. Ariz. 2024) (opt-out regime). A West Virginia law the State cites, which was upheld without the benefit of *AFPF*, required disclosure of donors who contributed more than $1,000 and "whose contributions were used to pay for electioneering communications." *Ctr. for Individual Freedom, Inc. v. Tennant*, 706 F.3d 270, 291 (4th Cir. 2013) (citation omitted). If these laws withstand constitutional scrutiny, *but see* Opening Br. 29 n.3 (doubting that they should), why couldn't Delaware use those states' tailoring mechanisms? The State provides no answer and no argument.[2]

---

[2] The State cites other pre-*AFPF* cases involving requirements that political committees and PACs must disclose their contributors. *See Fam. PAC v. McKenna*, 685 F.3d 800, 803 (9th Cir. 2012); *Justice v. Hosemann*, 771 F.3d 285, 289 (5th Cir. 2014); *No on E, San Franciscans Opposing the Affordable Hous. Prod. Act v. Chiu*, 62 F.4th 529, 533 (9th Cir. 2023); *Vt. Right to Life Comm., Inc. v. Sorrell*, 758 F.3d 118, 124 (2d Cir. 2014); *Worley v. Fla. Sec'y of State*, 717 F.3d 1238, 1241 (11th Cir. 2013). Even assuming these decisions remain good law, it is reasonable to assume donors giving to a PAC—typically organized around a single issue, candidate, or political party—intend to support the organization's political speech. Indeed, instead of supporting Delaware's position, these cases provide better tailored

Instead of defending its specific tailoring decisions, the State falls back on its assurance that Appellants could avoid its regime entirely by forming a political action committee (PAC), Br. 38-39. This argument is foreclosed by *Citizens United v. FEC*, which explained that "[a] PAC is a separate association" and explicitly rejected the assertion that "a PAC could somehow allow a corporation to speak." 558 U.S. 310, 337 (2010). Indeed, the State concedes that state PACs are "an alternative entity." Br. 39. Moreover, the State's blithe dismissal of AFPF's legal inability to form a PAC, Br. 39 n.8, is inadequate. A 501(c)(3) nonprofit like AFPF "may not make a contribution to a political organization" including a "PAC."[3] And while Delaware bills its PAC as an alternative for nonprofits, its convoluted statute ultimately defines a PAC as an entity "assist[ing] in the election of any candidate or in connection with any election campaign." 15 Del. C. § 8002(12), (18)-(19). AFPF's communications will mention officeholders who are candidates for reelection, which is why they trigger Delaware's extremely broad electioneering statute, but these "issue-based communications" are "consistent with [AFPF's] tax

---

"alternatives to the current disclosure requirement," *AFPF*, 594 U.S. at 613, and help demonstrate the Act's infirmity.

[3] *Frequently asked questions about the ban on political campaign intervention by 501(c)(3) organizations*, IRS, https://www.irs.gov/charities-non-profits/charitable-organizations/frequently-asked-questions-about-the-ban-on-political-campaign-intervention-by-501c3-organizations-contributions-to-political-organizations (last visited Aug. 4, 2026).

status." JA-027, JA-032. Contributing to a PAC, much less administering one, is not. Clearly "this undertaking requires" more than "a single online form." Br. 53.[4]

    c.    Ultimately, the State urges the Court to abandon narrow tailoring on the separate ground that "[m]oney is fungible." Br. 39 (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 31 (2010)). The State's theory appears to be that a dollar of giving in Oregon or Maine to a national organization that eventually spends in Delaware years later is a dollar of giving in Delaware. *See* Br. 39-40. Presumably, on their theory, that same dollar would simultaneously be just as reportable, and just as relevant to voters, in every other jurisdiction nationwide. That is not an argument for the fungibility of money; it is a claim that money is infinite.

More importantly, it is an argument that narrow tailoring should not be the standard. Campaign *finance* laws *always* regulate money. *See Citizens United*, 558 U.S. at 367 (the topic is "the sources of election-related spending"). To treat money's fungibility as the linchpin of a narrow tailoring analysis is to deem any spending anywhere the government's prerogative for unlimited regulation. It would spell the

---

[4] Moreover, Delaware cannot plausibly suggest the significant administrative costs required to navigate this legal morass, and the risk of IRS enforcement, eliminate the harm to AFPF from its unconstitutional statute. "The First Amendment does not permit laws that force speakers to retain a campaign finance attorney…before discussing the most salient political issues of our day." *Citizens United*, 558 U.S. at 324.

end of narrow tailoring with the ink barely dry on *AFPF*—a case also about money, 594 U.S. at 617 (the subject was "raising funds in California").

The State says the quiet part out loud in relying on a case upholding Congress's ban on material support for designated foreign terrorist organizations (FTOs), 18 U.S.C. § 2339B(a), in part based on a fungibility theory. *Holder*, 561 U.S. at 32 ("[p]roviding foreign terrorist groups with material support in any form also furthers terrorism"). Whatever the State's view, Supreme Court precedent is clear that persons who fund public communications are not equivalent to terrorists and their supporters. *See Citizens United*, 558 U.S. at 339 ("Speech is an essential mechanism of democracy, for it is the means to hold officials accountable to the people."). The State also fails to notice that, under a more tailored regime that penalizes persons who provide knowing substantial assistance to foreign terrorist organizations, courts have *rejected* a theory of money's fungibility as the basis for liability. *See Ashley v. Deutsche Bank Aktiengesellschaft*, 144 F.4th 420, 444 (2d Cir. 2025). Nothing could be more antithetical to the concept of narrow tailoring than to uphold a regulation based on money's fungibility.

### B.    *Delaware Strong Families* **is not controlling.**

The State principally defends the Act under the theory that *DSF* "remains controlling" and "thus governs here" before "a three-judge panel." Br. 17-18. But the State improperly dismisses precedent privileging—as this Court must—Supreme

13

Court decisions over Circuit precedent. *See, e.g.*, *In re Krebs*, 527 F.3d 82, 84 (3d Cir. 2008); *DiFiore v. CSL Behring, LLC*, 879 F.3d 71, 76 (3d Cir. 2018); *Mennen Co. v. Atl. Mut. Ins. Co.*, 147 F.3d 287, 295 n.9 (3d Cir. 1998); *Nationwide Ins. v. Patterson*, 953 F.2d 44, 46 (3d Cir. 1991). That precedent explains not only that a "panel of this Court may reevaluate the holding of a prior panel which conflicts with intervening Supreme Court precedent," *Krebs*, 527 F.3d at 84, but also that "intervening decisions would, in any event, allow [a panel] to reconsider contrary prior holdings without having to resort to an en banc rehearing," *DiFiore*, 879 F.3d at 76. Whatever else *AFPF* might be, it is certainly an intervening decision on the topic addressed in *DSF*. On that basis alone, the decision does not control.

In arguing that a panel may only set aside past Circuit decisions that are "obviously in conflict" with intervening Supreme Court precedent, Br. 17, Delaware avoids these binding precedents. Instead, it relies on: a concurring opinion from a 1984 decision; an unreported decision from the District of New Jersey; an unpublished opinion concerning a party's timeliness in seeking resentencing under new Supreme Court precedent; and an internal operating rule that makes no mention of the Supreme Court at all. Br. 17-18 (citations omitted). This is plainly insufficient and undermines the State's stated respect for this Court's precedents.

In any event, the conflict between *DSF* and *AFPF* is as clear as conflict could ever be. *See* Opening Br. 30-33. The Court need not take Appellants' word on this.

14

Writing for the Tenth Circuit, Judge Tymkovich explained that "[*DSF*] is a relic of pre-*Bonta* exacting scrutiny" and that, "[a]fter *Bonta*, a court would surely take a closer look at the 'extent to which the burdens are unnecessary'" than the *DSF* decision did. *Wyo. Gun Owners*, 83 F.4th at 1249. It is perplexing for the State to say that Appellants' argument to this effect—relying heavily on Judge Tymkovich's opinion, *see* Opening Br. 30-31—"verges on frivolous." Br. 13.

The State is wrong to contend that Appellants "identify no conflict between the two decisions." Br. 18-19. The conflict is the very conflict Judge Tymkovich cited. *See* 83 F.4th at 1249-50; Opening Br. 30-33. Specifically, *AFPF* mandates a narrow tailoring inquiry that entails a comparison of the challenged law's burdens against alternatives, but "nowhere did [*DSF*] require the government to 'demonstrate its need' for the disclosure regime's burden 'in light of any less intrusive alternatives.'" *Wyo. Gun Owners*, 83 F.4th at 1250 (quoting *AFPF*, 141 S. Ct. at 2386). Appellants respond that *DSF* "said it conducted" a narrow tailoring inquiry, Br. 19, but that is wrong. *DSF* used the words once in its preface but did not say it was conducting a narrow tailoring inquiry in its analysis. *See* 793 F.3d 304, 306, 309 (3d Cir. 2015). Rather, *DSF* repeatedly stated that exacting scrutiny is satisfied so long as a law "bears a substantial relation to [a state's] interest in an informed electorate." *DSF*, 793 F.3d at 311; *see also id.* at 312 (same). Moreover, as Judge Tymkovich explained, the Court "seemed to use the word ['tailored']

15

interchangeably with the 'substantial relation' language[.]" *Wyo. Gun Owners*, 83 F.4th at 1249-50. Indeed, *DSF* only used the term "narrowly tailored" in its analysis to explain that the Act did *not* need to be narrowly tailored as judged against an earmarking requirement. *DSF*, 793 F.4th at 311-12. As to some aspects of the law, *DSF* applied rational basis review. Opening Br. 32-33. Given these clear points, it is baffling that the State believes Appellants "tacitly concede" that *DSF* properly applied a narrow tailoring element.[5] *See* Br. at 18-19. It is impossible to read pages 30-33 of the Opening Brief and reach that conclusion.

None of Appellants' arguments are particularly difficult or surprising. Like other circuit courts around the country prior to *AFPF*, this Court understood exacting scrutiny to only require "a substantial relation between the disclosure requirement and a sufficiently important governmental interest." *DSF*, 793 F.3d at 309 (internal citations omitted); *see also Wyo. Gun Owners*, 83 F.4th at 1244 (explaining that "[f]or decades [the Tenth Circuit] understood exacting scrutiny to require that the government show 'a substantial relation between the disclosure and a sufficiently important governmental interest'"); *Gaspee Project*, 13 F.4th at 85 (explaining that

---

[5] The State also expresses confusion as to "how the Act could survive an as-applied challenge" in *DSF*, "but fail a facial one." Br. 18. This Court's precedent answers that question. *See N.J. Bankers Ass'n v. Att'y Gen. N.J.*, 49 F.4th 849, 859 (3d Cir. 2022) ("'Under the First Amendment overbreadth doctrine, a party may bring a facial challenge against a statute, even though it is not unconstitutional as applied to that particular party, because the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'").

16

prior to *AFPF*, "exacting scrutiny was widely understood to require only a 'substantial relation'"). The core problem in *AFPF* itself was that the Ninth Circuit "did not apply a narrow tailoring requirement…because it did not read [Supreme Court] cases to mandate any such inquiry." *AFPF*, 594 U.S. at 612. It is understandable that other circuits—including this one—made the same error. The lower courts' task now is to correct their precedent rather than persist in error.

Faced with that point, the State nonsensically reasons that, because of *AFPF*'s "reaffirmation of exacting scrutiny," the Supreme Court could not have "effectively *changed* exacting scrutiny" and must not have clarified "that it requires narrow tailoring review," and thus that all exacting scrutiny cases *except the Ninth Circuit's* are necessarily good law. Br. 21-22. That cannot possibly be right. For starters, while *AFPF* located a narrow-tailoring inquiry in *some* of *the Supreme Court's* precedents applying exacting scrutiny, it did not hold even that all of *its own* precedents had necessarily gotten the standard correct. *See AFPF*, 594 U.S. at 608-11.

More to the point here, the Supreme Court could not plausibly have intended, in *reversing* one circuit's precedent, to silently *affirm* all similar circuit decisions that made the same error. The Supreme Court does not typically engage in error correction under settled standards. *See* STEPHEN M. SHAPIRO, ET AL., SUPREME COURT PRACTICE ch. 4, § 2 (11th ed. 2019). And, because the purpose of Supreme Court review is uniformity in federal law across the circuits, *see* Sup. Ct. R. 10(a),

the Supreme Court can only be understood to have desired abrogation of all decisions that made the Ninth Circuit's error rather than assertion of a governing standard in the Ninth Circuit alone. That is why other circuits, filling their proper role, have acknowledged that *AFPF* "clarified the contours" of exacting scrutiny and "tightened [the court's] review of disclosure laws." *Wyo. Gun Owners*, 83 F.4th at 1243-44; *Gaspee Project*, 13 F.4th at 85 (1st Cir. 2021) (explaining that AFPF "heightened this requirement" by requiring that "'the challenged requirement must be narrowly tailored to the interest it promotes.'") (quoting *AFPF*, 594 U.S. at 610). This Court should follow suit.

Ultimately, the State's argument smacks more of a misinterpretation of *AFPF* than an attempt to reconcile *AFPF* and *DSF*. Everything in the State's presentation follows from its flawed premise that when *AFPF* held that a state's means "must be viewed in the light of less drastic means for achieving the same purpose," the Supreme Court did not really mean it. 594 U.S. at 610-11 (citation omitted); *see* Br. 24-25. Because that argument fails, *see supra* § I.A.2, so do the State's other arguments.

### C.    Delaware's campaign finance precedents do not rescue the Act.

Delaware also defends the Act by comparing it to the federal Bipartisan Campaign Reform Act ("BCRA"). *See, e.g.*, Br. 3-8, 29-34. This argument fails, in the first instance, because it is no substitute for the State's obligation to satisfy

exacting scrutiny for *its own* law, which requires proof that it is "narrowly tailored to the government's asserted interest." *AFPF*, 594 U.S. at 608. The State cites no authority for the proposition that, because the federal government's law might satisfy that standard, every analogous state and local law must as well. To the contrary, the Supreme Court rejected a similar argument in *AFPF*, where California sought *exactly* the information the Internal Revenue Service already demanded from *the same* regulated entities. *See* 594 U.S. at 602. It did not follow in *AFPF* that any state collection of the same information was equally justified, given that the federal regime "may raise issues not presented" from the state's regime. *Id.* at 617-18. Here, Delaware did not have anything like Congress's "six-volume report summarizing the results of an extensive investigation into the campaign practices in the 1996 *federal* elections," which supported BCRA, *McConnell v. FEC*, 540 U.S. 93, 129 (2003) (emphasis added), *overruled by Citizens United*, 558 U.S. 310, and the tailoring needs for federal and state elections may differ.

In fact, Delaware's reliance on the Supreme Court decisions addressing BCRA's disclosure requirements, *McConnell* and *Citizens United*, only underscores why there is no blanket ratification of all disclosure requirements in one stroke. *McConnell* did not address the general disclosure of donors to a nonprofit corporation, and undertook no tailoring analysis in that context, for a simple reason: it was a crime for corporations to fund electioneering communications. *McConnell*,

540 U.S. at 204. Accordingly, the Court's analysis is limited to donor disclosure by (1) "a single individual who has collected contributions from others" and (2) a corporation's "segregated account"—its PAC. *Id.* at 194-95 (citation omitted). The Court, unsurprisingly, did not address the interests of general donors funding then-unlawful communications by entities not entitled to make them.

In fact, *McConnell* did not address tailoring at all, apparently because that issue was not raised. 540 U.S. at 195. Moreover, as the State seems to admit, *McConnell* did not apply any narrow tailoring element and therefore yields to *AFPF*, the more recent Supreme Court decision on the governing standard. "Questions which 'merely lurk in the record,'…are not resolved, and no resolution of them may be inferred." *Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 183 (1979) (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925)).

Relatedly, the State emphasizes that the FEC regulation requiring disclosure only of contributions "for the purpose of electioneering communications" was adopted after *McConnell* and claims that the FEC acted "on its own initiative." Br. 35. This is badly misleading. The first sentence of the regulatory notice explains that the FEC was acting "to implement the recent U.S. Supreme Court decision in *FEC v. Wisconsin Right to Life, Inc.*"—the case that legalized certain corporate electioneering communications. 72 Fed. Reg. 72899 (Dec. 26, 2007); *see FEC v. Wis. Right To Life, Inc.*, 551 U.S. 449, 476-82 (2007) (principal opinion). Confronted

with newly-legal communications Congress had not envisioned, the Commission noted that "donors do not necessarily support [a] corporation's electioneering communications" and fashioned a regime that "provides the public with information about those persons who actually support the message" rather than those "who have provided funds for purposes entirely unrelated to" the communication. 72 Fed. Reg. at 72911. This was not controversial; "all commenters" agreed that these general donors should not be reported. *Id.* at 72910. Small wonder the D.C. Circuit—*after McConnell*—upheld the rule and rejected a reading of federal law requiring the "disclosure of *all* donations irrespective of donative purpose." *Van Hollen v. FEC*, 811 F.3d 486, 488 (D.C. Cir. 2016).

Delaware's turn to *Citizens United* fares no better. There, a nonprofit corporation argued that disclosure rules could not be applied to commercial speech at all, even if a commercial advertisement met the electioneering communications definition. 558 U.S. at 368. That argument failed. But the Court was not asked to consider the *scope* of that disclosure, did not review the FEC's tailored regulation, and nowhere suggested that all donors to Citizens United, and not merely those giving for electioneering communications, would become public. Here, again, the support the State claims to find for its Act is, at best, "lurking" in the decision. *Socialist Workers Party*, 440 U.S. at 183.

21

**II.    The Act is unconstitutional as applied to Appellants.**

Delaware cannot show that the Act is narrowly tailored "as applied to" Appellants. *Wyo. Gun Owners*, 83 F.4th at 1244-50. The Act is therefore unconstitutional as applied at least to Appellants.

The State's assertion that Appellants' as-applied argument was not raised below is not only wrong but surprising. *See* Br. 48. At the preliminary-injunction hearing, Appellants' counsel was explicit that their as-applied challenge asks if the statute is "narrowly tailored as applied to this particular Plaintiff" given, for instance, "how AFPF and AFP work and the scope of their donors." JA-349. The discussion was extensive. JA-348-50, JA-352-53. The State's counsel knew of this argument and responded by admitting that the Tenth Circuit's *Wyo. Gun Owners* decision "looked at an as applied challenge with respect to whether it's narrowly tailored" but dismissed this analysis as "Tenth Circuit specific." JA-364-65. This argument based on *Wyo. Gun Owners* was raised in Appellants' briefing, Dist.Ct.Dkt.5 at 5, 10-11, 17-18, and the complaint alleges that "Delaware's disclosure requirements are not narrowly tailored as applied to Plaintiffs," JA-042 ¶ 75. Besides, in raising a First Amendment claim, Appellants necessarily preserved "any argument in support of that claim," *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995), including that an alleged First Amendment violation occurs as applied as well as

22

facially, *see Citizens United*, 558 U.S. at 330-31 (finding as-applied challenge preserved facial challenge). The argument is preserved many times over.

There is also no merit in the State's contention that there can be no as-applied tailoring analysis because "[t]ailoring is…inherently a facial question." Br. 49. That argument erroneously "eliminates the possibility of *as-applied* review." *Citizens United v. Gessler*, 773 F.3d 200, 216 (10th Cir. 2014). Contrary to the State's assertion, Br. 50, the Supreme Court has often addressed whether a law that might be tailored in some applications is nonetheless lacking in tailoring in others, such as where the government "identif[ied] no interest sufficiently compelling" to apply a BCRA provision to a plaintiff whose speech was "not express advocacy or its functional equivalent," *Wis. Right to Life*, 551 U.S. at 481 (controlling opinion), and where the "underlying rationale" of a provision of the Federal Election Campaign Act ("FECA") was "simply absent" for the unique plaintiff, *FEC v. Mass. Citizens for Life, Inc.*, 479 U.S. 238, 257, 263 (1986). In *Wyo. Gun Owners*, the Tenth Circuit found that Wyoming's requirement to disclose those who give donations that "relate to" specific communications was untailored as to the plaintiff because "it has no way to know which donor contributions 'relate to' that payment." 83 F.4th at 1247. This is a routine application of the doctrine permitting as-applied challenges, not a "doctrinally incoherent" novelty, as the State wrongly claims. Br. 50.

23

The State is also incorrect to claim as-applied challenges "would defy administration." Br. 50. It is common for plaintiffs to obtain exemptions from generally applicable laws because they are not within the ambit of justifications that support those laws in application to most other persons. *See, e.g.*, *Renne v. Geary*, 501 U.S. 312, 323-324 (1991); *Gessler*, 773 F.3d at 219; *Serafine v. Branaman*, 810 F.3d 354, 363-64 (5th Cir. 2016); *Picard v. Magliano*, 42 F.4th 89, 107 (2d Cir. 2022). Indeed, the State's argument is wholly inconsistent with the State's supposedly "dispositive" authority: *DSF*. That case involved an as-applied challenge to the Act, 793 F.3d at 306, and Delaware's central argument is that "*DSF* correctly reviewed the Act for narrow tailoring." Br. 23 (boldface omitted).

The State's assertion that Supreme Court precedent recognizes "only one basis for an as-applied exemption" based on a showing of likely harassment or reprisal, Br. 45, does not address Appellants' point the *AFPF* clarified that this is no longer the standard for a First Amendment claim, 594 U.S. at 617, and "the substantive rule of law is the same" for facial and as-applied claims, *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 509 n.5 (D.C. Cir. 2016). Even if Appellants were required to show a threat of harassment or reprisals, they did that. Opening Br. 47-49. The State is wrong to claim they had to show "the kind of harassment or reprisals that warranted exemptions for the sixty-member Socialist Workers Party or the NAACP in the 1950's." Br. 45. The Supreme Court has declined to impose such an

"unduly strict requirement[] of proof" and has instead held that an organization's proof of harassment and chill "may include…specific evidence of past or present harassment of members due to their associational ties, or of harassment directed *against the organization itself*. A pattern of threats or specific manifestations of public hostility may be sufficient." *Buckley v. Valeo*, 424 U.S. 1, 74 (1976) (emphasis added). Appellants meet this standard.

## III.    The remaining injunction factors favor an injunction.

By forcing Appellants to choose between silence and donor disclosure, Delaware imposes a classic First Amendment injury that is irreparable and contrary to the public interest. Opening Br. 49-51. Delaware cites two cases to suggest that this case is an outlier, but both are exceptions proving the rule. In *Anderson v. Davila*, this Court remanded a First Amendment case alleging unlawful surveillance because the government "contend[ed] that it ha[d] terminated its surveillance." 125 F.3d 148, 164 (3d Cir. 1997). And in *Hohe v. Casey*, this Court merely applied the venerable rule that, where a "plaintiffs' remedy, should they succeed on the merits, will consist of restitution and/or monetary damages" they are not *irreparably* injured because they will later be made whole. 868 F.2d 69, 73 (3d Cir. 1989). Neither decision is remotely applicable here.

In all events, the State is mistaken in asking this Court to find these factors against Appellants, Br. 52-54, because the district court did not weigh the equities at

25

all. *See* JA-013-14. Delaware's sole argument against irreparable injury is a restatement of its view that nothing "prevents [Appellants] from registering a PAC or forming another association"—in essence, that rather than communicating themselves they may create and then contribute to another entity to do so. Br. 52. As explained above (§ I.A.2), this argument is erroneous on several grounds, which leaves the State's position to rise or fall on the Court's merits determination.

Nor is the State consistent. Somewhat confusingly, having argued there is no irreparable harm to Appellants because they can avoid donor disclosure, the State reverses course in the next paragraph and complains that an injunction will "deprive voters of the information mandated by the Act." Br. 53. This is merely a repackaging of its merits argument, and Delaware cannot have things both ways.

Finally, even if the Court somehow saw currency in the State's arguments concerning the equities, that would not permit it to affirm the order below. The district court did not balance the equities but rested solely on its view about the likely outcome on the merits. JA-013-14. Thus, if this Court agrees with Appellants that they are likely to succeed on the merits, and has any doubts about the equitable balancing, that "would require remand" to permit the trial court to address the equitable factors in the first instance—with the benefit of this Court's merits analysis. *See, e.g.*, *Fres-co Sys. USA, Inc. v. Hawkins*, 690 F. App'x 72, 79 (3d Cir. 2017).

## <u>Conclusion</u>

The Court should reverse the district court's denial of the preliminary injunction and direct it to issue the requested injunction.

Dated: August 4, 2026

ERIKA D. PROUTY
ROBERT J. TUCKER
BAKER & HOSTETLER LLP
200 Civil Center Dr., Suite 1200
Columbus, OH 43215-4138
(614) 228-1541
eprouty@bakerlaw.com
rtucker@bakerlaw.com

*/s/ Allen J. Dickerson*

ALLEN J. DICKERSON
RICHARD B. RAILE
BAKER & HOSTETLER LLP
Washington Square, Ste. 1100
1050 Connecticut Ave., N.W.
Washington, DC 20036
(202) 861-1711
adickerson@bakerlaw.com
rraile@bakerlaw.com

*Counsel for Appellants Americans for Prosperity Foundation and Americans for Prosperity*

## **Certificate of Compliance**

The undersigned counsel for Appellants hereby certifies pursuant to L.A.R. 46.1(e) that he is a member in good standing of the bar of this Court.

The undersigned counsel for Appellants hereby certifies that this brief complies with the requirements of Fed. R. App. P. 32(a)(7)(B) and 32(a)(5)–(6) in that it is prepared in 14-point, proportionately spaced Times New Roman font type utilizing Microsoft Word and contains 6,479 words, including headings, footnotes, and quotations. The text of the electronic document is identical to the paper copies.

The undersigned counsel for Appellants hereby certifies that pursuant to L.A.R. 31.1(c), this electronic document was scanned for viruses using CrowdStrike Falcon Sensor Version 7.38.21003.0 prior to filing and found to be virus free.

Dated: August 4, 2026

*/s/ Allen J. Dickerson*

ALLEN J. DICKERSON
BAKER & HOSTETLER LLP
Washington Square, Ste. 1100
1050 Connecticut Ave., N.W.
Washington, DC 20036
(202) 861-1711
adickerson@bakerlaw.com

*Counsel for Appellants*

## Certificate of Service

The undersigned counsel for Appellants hereby certifies that the foregoing brief was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: August 4, 2026

/s/ Allen J. Dickerson

ALLEN J. DICKERSON
BAKER & HOSTETLER LLP
Washington Square, Ste. 1100
1050 Connecticut Ave., N.W.
Washington, DC 20036
(202) 861-1711
adickerson@bakerlaw.com

*Counsel for Appellants*