# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 26-2469

AMERICANS FOR PROSPERITY FOUNDATION;
AMERICANS FOR PROSPERITY,
Appellants

v.

ANTHONY J. ALBENCE, in his official capacity as State Election Commissioner for the State of Delaware; ATTORNEY GENERAL OF DELAWARE

---

On Appeal from the U.S. District Court, D. Del.
Judge Jennifer L. Hall, No. 1:26-cv-00445

Before: HARDIMAN, BIBAS, and RENDELL, *Circuit Judges*
Argued: Aug. 10, 2026; Filed: Aug. 31, 2026

---

OPINION OF THE COURT

BIBAS, *Circuit Judge*. A court considering a preliminary injunction should weigh not only the merits and risk of irreparable injury, but also the balance of equities and public interest. *See Winter v. NRDC*, 555 U.S. 7, 20 (2008). Ordinarily, the balance of equities strongly favors preserving the status quo, not disrupting it. And if the case would survive through final judgment without a preliminary injunction, issuing one may well be unnecessary.

The challengers here claim that Delaware's campaign-finance disclosure law violates the First Amendment. But by asking for a preliminary injunction, they seek to disrupt the decade-long status quo, and they show no need for an injunction to keep the case alive. Plus, they have made almost no factual record to flesh out their likelihood of success and the injuries they fear in the meantime. So we will AFFIRM the District Court's order denying the preliminary injunction.

## I. ANOTHER CHALLENGE TO THE DELAWARE ELECTIONS DISCLOSURE ACT

In 2012, Delaware enacted the Elections Disclosure Act. The Act applies to groups that spend more than $500 on "electioneering communication[s]" within 30 days of a primary election or 60 days of a general election. 15 Del. C. §§ 8002(10), 8031(a). Those groups must publicly disclose the names and addresses of anyone who gave them more than $100 during that election cycle. § 8031(a). Disclosure is not limited to donors who earmark their donations for political ads or for use in Delaware. Nor may donors avoid disclosure by giving money on the condition that it cannot be used for political ads. And because of how the Act defines election cycles, groups may have to disclose donors who gave up to four years before the election. *See* § 8002(11)(a)(1); Appellant's Br. 7.

More than a decade ago, this Court upheld the Act against a First Amendment challenge, applying "exacting scrutiny." *Del. Strong Fams. v. Att'y Gen. of Del.*, 793 F.3d 304, 309–13 (3d Cir. 2015). Six years later, in a case that did not involve campaign finance, the Supreme Court clarified how to apply

"exacting scrutiny" to donor-disclosure laws. *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 611–12 (2021).

Five years after *Bonta*, the challengers filed this suit, claiming that *Bonta* abrogated *Delaware Strong Families*. They raise both facial and as-applied First Amendment challenges. The challengers are nonprofit corporations that engage in issue advocacy across the nation. They have not and do not currently run electioneering communications in Delaware. But they plan to do so for the upcoming November 2026 election—if the District Court enjoins enforcement of the Act.

Seven weeks after the challengers sued, the District Court held a preliminary-injunction hearing. The challengers put on no live witnesses and offered no affidavits from donors who feared disclosure. For their evidence, they relied entirely on a single employee's declarations that the challengers' employees, supporters, and donors have faced threats before. The allegations were "generic" and not tied specifically to election donations. App. 11.

On this "very slim" evidentiary record, the District Court denied the preliminary injunction. App. 6. It found no likelihood of success on the facial challenge because *Delaware Strong Families* had upheld the Act and *Bonta* did not clearly abrogate that ruling. It also doubted that the challengers would succeed on their as-applied challenge because the "generic, undated" evidence of threats to the organization, "as opposed to specific donors," did not show that disclosing donor information would likely expose donors to harm. App. 12. Plus, the court noted, the Act had been "on the books" and enforced for more than a decade. App. 13–14. Thus, it left in place the status

quo, "exercis[ing] [its] discretion to decline to enter the injunction." App. 14.

We have jurisdiction to review the denial of a preliminary injunction under 28 U.S.C. § 1292(a)(1). We review the District Court's legal rulings de novo, its findings of fact for clear error, and its ultimate decision for abuse of discretion. *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 198 (3d Cir. 2024). We review "deferentially," because "the denial of a preliminary injunction is almost always based on an abbreviated set of facts, requiring a delicate balancing that is the responsibility of the district judge." *Id.* (internal quotation marks omitted).

## II. PRELIMINARY INJUNCTIONS EXIST TO KEEP CASES ALIVE

Equitable relief is exceptional, reserved for "*extraordinary cases*, which are *exceptions* to general rules." *The Federalist No. 83*, at 505 (Alexander Hamilton) (Clinton Rossiter ed., 1961) (footnote omitted). Because injunctions can inflict as much harm as they prevent, equity traditionally aims to "arrive at a nice adjustment and reconciliation between the competing claims" of harm. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (internal quotation marks omitted). Not only does the plaintiff fear harm from being denied an injunction; the defendant state, if it loses, suffers irreparable injury from having enforcement of its law enjoined. *Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018); *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers); *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J.,

in chambers); *Labrador v. Poe*, 144 S. Ct. 921, 923 (2024) (Gorsuch, J., concurring in the grant of stay).

Balancing harms is especially fraught for preliminary injunctions, where courts must rule quickly based on limited information. Courts risk making mistakes. That risk is high because courts do not know for certain who will ultimately win on the merits, let alone whether a final injunction will follow. The court makes "only a prediction about the merits of the case." *United States v. Loc. 560 (I.B.T.)*, 974 F.2d 315, 330 (3d Cir. 1992). And it makes that prediction on thin evidence. "Affidavits drafted by lawyers are poor substitutes for discovery, live testimony, and cross-examination." *Del. State Sportsmen's*, 108 F.4th at 200.

Given these unknowns, the preliminary injunction's function "is not to take whatever steps are necessary to prevent irreparable harm." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1012 (10th Cir. 2004) (McConnell, J., concurring). Instead, it is "merely to preserve the relative positions of the parties until a trial on the merits can be held." *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (internal quotation marks omitted). In other words, the court acts to maintain the status quo, "to preserve the court's power to render a meaningful decision after a trial on the merits." *Del. State Sportsmen's*, 108 F.4th at 201 (internal quotation marks omitted).

Though some harm may be suffered either way, the status quo helps courts choose the lesser of two evils. First, the harm from temporarily changing the status quo is likely greater than the harm from temporarily leaving it alone. "Disruption is

expensive," and altering the status quo only to change it back disrupts things twice, rather than once at the end. *O Centro*, 389 F.3d at 1017 (McConnell, J., concurring).

Second, the status quo gives courts a glimpse (albeit a hazy one) into how much each party would suffer in the meantime. A "party's willingness to put up with a situation in the past can serve as an indication that the party's injury is not as serious as alleged, or that the party has implicitly consented to the supposed injury." *Id.*; *see also Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985).

Finally, altering the status quo makes the court complicit in whatever harm its preliminary action might inflict. A court in equity should refuse to be "the abettor of iniquity." *Monsanto Co. v. Rohm & Haas Co.*, 456 F.2d 592, 598 (3d Cir. 1972) (internal quotation marks omitted). So a "judicial version of Hippocrates' ancient injunction to physicians—above all, to do no harm—counsels against forcing changes before there has been a determination of the parties' legal rights." *O Centro*, 389 F.3d at 1012 (McConnell, J., concurring).

For all these reasons, "[w]hen a statute has long been on the books and enforced, … it is exceedingly unusual for a litigant who challenges its constitutionality to obtain (or even to seek) a preliminary injunction against its continued enforcement." *Id.* at 1018; *see also Walters v. Nat'l Ass'n of Radiation Survivors*, 468 U.S. 1323, 1324 (1984) (Rehnquist, J., in chambers). Old statutes are not immune from preliminary relief, but their age heightens the challengers' burden.

## III. THE DISTRICT COURT PROPERLY PRESERVED THE STATUS QUO

In exercising its discretion to grant or deny a preliminary injunction, a district court looks to four guideposts: (1) the plaintiff's likelihood of success on the merits; (2) the risk of irreparable injury absent preliminary relief; (3) the balance of equities; and (4) the public interest. *Winter*, 555 U.S. at 20. When the government is the defendant, factors three and four merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). In the district court, the party asking for the preliminary injunction must persuade the court "*by a clear showing*" that it deserves one. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (internal quotation marks omitted). And on appeal from the denial of a preliminary injunction, appellants "bear[] a heavy burden." *Chesimard v. Mulcahy*, 570 F.2d 1184, 1187 (3d Cir. 1978). Here, they have not borne it.

### A. The likelihood of success is hazy

The challengers argue forcefully that they are likely to succeed on the merits. True, *Delaware Strong Families* rejected a similar First Amendment challenge. But, the challengers urge, *Bonta* tightened up the narrow-tailoring requirement. *Compare* 594 U.S. at 608, *with* 793 F.3d at 311–12 (analyzing only whether the law bears a "substantial relation" to an important state interest). And, the challengers argue, *Delaware Strong Families* did not consider the Act's nationwide scope or four-year lookback provision, provisions that they attack today. 793 F.3d at 310–12 & n.5.

On the other hand, *Bonta* was not an election case. Neither was the other recent case on which the challengers rely. *First*

*Choice Women's Res. Ctrs., Inc. v. Davenport*, 608 U.S. ___, ___, 146 S. Ct. 1114, 1124 (2026) (holding that a charity subpoenaed for donor information has standing to challenge the subpoenas). That distinction matters, because election-law precedents recognize that "disclosure often represents a less restrictive alternative" to other options. *Nat'l Republican Senatorial Comm. v. FEC*, 609 U.S. ___, ___, 146 S. Ct. 2404, 2421 (2026) (internal quotation marks omitted); *see also Buckley v. Valeo*, 424 U.S. 1, 68 (1976) ("[D]isclosure requirements—certainly in most applications—appear to be the least restrictive means of curbing the evils of campaign ignorance and corruption."). Indeed, the government has an interest in informing voters where election-related spending is coming from. *See Citizens United v. FEC*, 558 U.S. 310, 367 (2010). A panel of this Court, and possibly our entire Court sitting en banc, may have to grapple with whether to revisit *Delaware Strong Families* based on *Bonta* and *First Choice*'s observations in other contexts.

If *Delaware Strong Families* is no longer good law, the record before us says little about whether Delaware demands more disclosure than its interests justify. Delaware plans to provide that evidence at trial, including testimony from voters and campaign officials who value donor disclosures, and statistics about how many people visit Delaware's donor-disclosure database. On this underdeveloped record, it is hard to forecast whether Delaware will show that its tailoring is narrow enough to defeat the facial challenge.

The same is true for the as-applied challenge. For that, the challengers must show a "reasonable probability that disclosure of its contributors' names will subject them to threats,

harassment, or reprisals." *Citizens United*, 558 U.S. at 367 (internal quotation marks omitted). On a more thorough record, they might be able to make that showing. But the challengers have not yet offered anything from donors—just "generic, undated" examples of "threats to AFP as an organization as opposed to specific donors." App. 12. These affidavits give us little confidence in the likelihood of success. This early on, it is hard to say.

### B. A preliminary injunction is discretionary; there is no right to one

The challengers would have us stop there. They argue that if they show a likelihood of success on the merits, the District Court lacks discretion to deny an injunction. They reason that they will suffer irreparable injury in being forced to choose between silence and disclosure before final judgment. And because the challengers assert that the merits are in their favor, they say the equities entirely favor them. After all, they reason, Delaware has no "interest in enforcing an unconstitutional law." Oral Arg. 7:55, https://perma.cc/9X6T-C4JW. They misunderstand equity.

"As a matter of equitable discretion, a preliminary injunction does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits." *Benisek v. Lamone*, 585 U.S. 155, 158 (2018) (per curiam). "[A] federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law," let alone every *likely* violation of law. *Weinberger*, 456 U.S. at 313.

It makes no difference that challengers invoke the First Amendment. We may not "do away with the traditional

prerequisites for injunctive relief simply because First Amendment freedoms [a]re implicated." *Anderson v. Davila*, 125 F.3d 148, 164 (3d Cir. 1997). True, we presume First Amendment harms irreparable. *Del. State Sportsmen's*, 108 F.4th at 204. But we also presume that enjoining enforcement of the law would irreparably harm Delaware. *Abbott*, 585 U.S. at 602 n.17. Irreparable injury is not a light switch, but a spectrum. Challengers must show us where they sit on that spectrum, so that we can evaluate their harms in light of the equities on both sides.

### C. Though there may be *some* irreparable harm, its size and scope are unclear

The challengers spend little time showing irreparable harm. Rather, they rely on the presumption that First Amendment harm is irreparable. *Del. State Sportsmen's*, 108 F.4th at 204. But we presume only the nature of the harm, not its probability or degree.

The challengers say that, without a preliminary injunction, they will stay silent during the sixty days before the general election rather than disclose their donors' information. That may be some irreparable harm, but we do not know how much. The challengers were free to speak until sixty days before the election but did not. And we have only an affidavit from the organization, not testimony from their donors, that speaks in generalities about possible harms from disclosure. Plus, as Delaware notes, the challengers could create and fund a Delaware political-action committee or unincorporated association, limiting disclosure to donors who fund those Delaware-specific groups. Appellees' Br. 9–10. It is possible that these extra hoops add an unconstitutional burden to the challengers'

speech. *See Citizens United*, 558 U.S. at 337–38; *see also Del. Strong Fams.*, 793 F.3d at 312 n.10. But we do not yet know.

**D. The balance of equities favors Delaware and the status quo**

We spot the challengers some likelihood of success and some irreparable injury. Even so, the District Court did not abuse its discretion by denying the injunction.

Preliminary injunctions exist mainly to keep cases alive so that the parties can contest the merits. But there is no risk of this case dying. As the District Court noted, the Act "has been on the books for more than a decade"; it stands to reason the challenges will survive if it stays there for another year or two. App. 13–14. That delay will not moot the case or render final judgment "useless." *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975).

"The presumption of constitutionality which attaches to [legislation] is not merely a factor to be considered in evaluating success on the merits, but an equity to be considered in favor of [the government] in balancing hardships." *Walters*, 468 U.S. at 1324 (Rehnquist, J., in chambers). Faced with the state's weighty interest in enforcing its law, which counterbalances the challengers' own feared injury, the challengers should have proven the risks that their donors would face under the Act's longstanding requirements. Instead, they declined the District Court's invitation to hold an evidentiary hearing. And they failed to explain why they chose not to bring this suit earlier. Equity aids the diligent, not the tardy. *Bowman v. Wathen*, 42 U.S. (1 How.) 189, 193 (1843). The challengers say they decided only recently to speak in Delaware. But when pressed,

counsel was unsure when they made that decision. Promptness is especially important for elections. The Supreme Court has repeatedly warned lower courts not to "alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020) (per curiam). Two months out from an election, caution is a virtue.

The District Court properly recognized that its decision was an "exercise [of] discretion." App. 13. And it properly exercised that discretion to preserve the status quo. The challengers have not shouldered their heavy burden to disturb it.

* * * * *

Preliminary injunctions are discretionary; they are designed primarily to keep cases alive and usually to preserve the status quo. Even if there is some likelihood of success and some irreparable injury, a district court may find that the balance of equities is enough to cut the other way. Because the District Court properly exercised its discretion to preserve the status quo and deny the preliminary injunction, we will AFFIRM.

*Counsel for Appellants*

Allen J. Dickerson [Argued]
Erika D. Prouty
Richard B. Raile
Robert J. Tucker
BAKER HOSTETLER

*Counsel for Appellees*

Emily V. Burton [Argued]
Jennifer-Kate Aaronson
DELAWARE ATTORNEY GENERAL'S OFFICE

Tara Malloy
CAMPAIGN LEGAL CENTER